**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

DEBORAH A. BROOKS,       )
                         )
       Plaintiff,    )
                         )
vs.                      )  Case No. 17-cv-00371-JPG-CJP
                         )
NANCY A. BERRYHILL,      )
Acting Commissioner of Social Security, )
                         )
       Defendant.[1]   )

## MEMORANDUM AND ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Deborah A. Brooks seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff filed for DIB on June 21, 2013, alleging a disability onset date of September 25, 2011. (Tr. 135-41.) The application was denied initially and again on reconsideration. (Tr. 63-83.) Plaintiff requested an evidentiary hearing, which Administrative Law Judge (ALJ) Gwen Anderson conducted on February 11, 2016. (Tr. 27-62.) ALJ Anderson issued an unfavorable decision thereafter. (Tr. 11-26.) The Appeals Council denied plaintiff's request for review and the ALJ's decision became the final agency decision. (Tr. 1-4.) Plaintiff exhausted her administrative remedies and filed a timely Complaint in this Court. (Doc. 1.)

### Plaintiff's Argument

Plaintiff argues the ALJ erroneously evaluated the medical opinions in the record.

### Legal Standards

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes", then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations— failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*,

245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## **The ALJ's Decision**

ALJ Anderson determined plaintiff met the insured requirements through March 31, 2018 and had not engaged in substantial gainful activity since December 14, 2012, the alleged onset date. The ALJ opined plaintiff had severe impairments of disorders of the muscle, ligament and fascia, osteoarthrosis and allied disorder, and disorder of the back. (Tr. 16.)

ALJ Anderson found plaintiff had the RFC to perform a full range of light work, except she could not climb ladders, ramps, or scaffolds, kneel, crouch, crawl, or squat more than occasionally. Additionally, plaintiff could never work around unprotected heights and could only balance on level surfaces. (Tr. 17.)

3

The ALJ concluded that although plaintiff could not perform any past relevant work, she was not disabled because jobs existed in the national economy that she could perform. (Tr. 21.)

**Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the plaintiff's argument.

1. **Agency Forms**

In the agency forms, plaintiff indicated that back pain and arthritis in her knees limited her ability to work. Plaintiff had a twelfth-grade education. For the previous fifteen years, plaintiff cleaned hotels and offices, assisted the elderly, and worked in sales. (Tr. 178-79, 206.)

Plaintiff experienced back pain if she stood for over an hour, and she could not walk one block without shortness of breath. Throughout an average day, plaintiff remained in bed and got up to look for work. She tried to clean her house but could not make her bed because the mattress was too heavy to lift. Back pain also interfered with sleeping. Plaintiff could prepare simple meals but her husband or sister did most of the cooking. She found it difficult to bend, twist, and move around. Plaintiff could put clothing into the laundry machine and fold them while sitting down. She cleaned the restroom, washed dishes, and vacuumed. Her sister helped her clean. Plaintiff could grocery shop for about thirty minutes by helping her husband put food in the cart. (Tr. 195-98, 212-15.)

Plaintiff was unable to hold her grandchildren because they were too heavy. Her hobbies included watching television and playing card games. She also went to church on Wednesdays and Sundays. (Tr. 199-202, 216-19.)

2. **The Evidentiary Hearing**

ALJ Anderson presided over an evidentiary hearing in February 2016, at which plaintiff was represented by counsel. (Tr. 27-62.)

Plaintiff stated she had arthritis, back pain, and carpal tunnel in her left arm. Plaintiff was born on December 28, 1963. She was separated from her husband and lived with her son, her son's girlfriend, and her grandchild. (*Id.*)

Plaintiff tried to work the previous year as a driver for Salvation Army but her back pain prevented her from performing her duties. She cleaned hotels and welded plastics in the past.

Plaintiff could not sit or stand for long periods without holding onto something. She had arthritis in her back and left shoulder. Plaintiff had carpal tunnel in her left wrist, but a brace helped her "a whole lot." (*Id.*)

Plaintiff took medication for thyroid problems, arthritis, and cholesterol. She took hydrocodone twice per day, which made her tired. After taking hydrocodone in the morning, she took a nap around ten a.m. that lasted about four hours. (*Id.*)

Plaintiff began physical therapy following a car accident the previous December. Her back pain worsened after the accident. (*Id.*)

Plaintiff used a cane, but her doctor did not give her a prescription for one because plaintiff told him she could use one of her mother's. Plaintiff's doctor also recommended not lifting over six or seven pounds. (*Id.*)

Plaintiff could wash dishes for four minutes at a time, do laundry, make her bed, and dress herself. Plaintiff went grocery shopping with her son. She was unable to perform other housework as she used to, such as vacuuming and mopping. She attended church, went to the movies, and rode the bus with her grandchild. Plaintiff cared for her grandchild by coloring with her and dressing her. (*Id.*)

A vocational expert (VE) also testified at the hearing that an individual with plaintiff's age, education, work experience, and ultimate RFC could not perform plaintiff's past relevant work. However, other jobs existed that the hypothetical individual could perform. The VE further opined that an individual who was off task more than ten to fifteen percent of the day could not competitively maintain a job. An individual who works in the private sector is generally not permitted to be absent more than two days per month. Furthermore, probationary periods that last about ninety-days permit less absenteeism. Individuals who work in the public sector cannot be absent more than three or four days per month. (*Id.*)

### 3. Medical Records

Plaintiff established care with Dr. Alfred Johnson in October 2011 following a motor vehicle accident. She reported left arm, left shoulder, and lower back pain. On examination, plaintiff's motion was good but she complained of pain. Her left shoulder was tender. Dr. Johnson assessed plaintiff with a cervical strain, a lumber strain, and a jammed left shoulder. He prescribed her Vicodin and referred plaintiff to physical therapy. (Tr. 266.)

On December 5, 2011, plaintiff returned to Dr. Johnson and complained physical therapy made her sore. She still had constant back pain. On examination, plaintiff's back was non-tender but she complained of pain with movement. Dr. Johnson assessed her with a cervical strain that was moderately better, a lumbar strain that was no better, and a jammed left shoulder that was better. Dr. Johnson referred plaintiff to a chiropractor and prescribed her Vicodin and Flexeril. (Tr. 265.) Plaintiff contacted Dr. Johnson's office on December 7, 2011 and stated she could not afford to see a chiropractor. (Tr. 265.)

Plaintiff followed-up with Dr. Johnson on November 7, 2011 and stated she still experienced back pain. She was attending physical therapy but it made her left shoulder hurt

6

worse. On examination, plaintiff demonstrated a non-tender left shoulder with good range of motion and some complaints of pain. Her lower back was non-tender, her motion was good, and a straight leg-raising test was negative. Dr. Johnson assessed plaintiff with a lumbar strain and jammed left shoulder. He advised her to continue physical therapy and prescribed her Vicodin and Flexeril. (Tr. 264.)

Plaintiff presented to Dr. Johnson on January 19, 2012. She stated she felt better but was still in pain when she had to bend and lift at work. On examination, plaintiff could flex her back "pretty well" and place her left shoulder over her head "much better." Dr. Johnson assessed plaintiff with a lumbar and cervical strain and prescribed Vicodin and ibuprofen. (Tr. 263.)

Dr. Johnson called plaintiff on February 14, 2012 to inform her she had hypothyroidism. She received a prescription for Synthroid. (Tr. 260.)

Plaintiff continued to follow-up with Dr. Johnson on a regular basis and consistently complained of lower back pain. Dr. Johnson diagnosed her with lower back pain and prescribed Vicodin, levothyroxine, Norco, simvastatin, and ibuprofen throughout the course of his treatment of plaintiff. On April 17, 2012, Dr. Johnson noted plaintiff's back was non-tender on examination. (Tr. 261.) On August 13, 2012, Dr. Johnson noted plaintiff's back was non-tender and a straight leg raise test was negative. Motion caused her pain. (Tr. 262.) On November 13, 2012, plaintiff's back was non-tender. (Tr. 262.) On February 12, 2013, Dr. Johnson noted back spasms. Plaintiff was non-tender and a straight leg raise test was negative. (Tr. 260.) On June 24, 2013, plaintiff told Dr. Johnson she tried to work but was unable to do much because of her back pain. She demonstrated tenderness of her right lower back and pain with motion. (Tr. 258.) On August 26, 2013, plaintiff complained of shortness of breath when walking and

7

difficulty standing. She stated she had not been taking her thyroid medication correctly. Dr. Johnson noted plaintiff's hypothyroidism was responsible for most of her symptoms. (Tr. 286.)

On September 5, 2013, plaintiff presented to St. Elizabeth's Hospital after slipping and falling at a store. She reported back pain. On examination, her back was tender. An x-ray of her lumbar spine showed no fracture but revealed mild degenerative joint disease and scoliosis. She was assessed with lower back pain and instructed to follow up with her primary care doctor. (Tr. 292-95.)

Dr. Vittal Chapa examined plaintiff on September 12, 2013. He assessed plaintiff with chronic lumbosacral pain syndrome. There was no evidence of lumbar radiculopathy, a straight leg raise test was negative bilaterally, her reflexes were symmetric, and her sensory examination was normal. She did not have difficulty ambulating. (Tr. 287-89.)

On September 26, 2013, plaintiff presented to Dr. Johnson. He noted plaintiff's back was non-tender. She had some pain on motion. Dr. Johnson instructed plaintiff to be cautious with lifting and bending. (Tr. 283-85.) On October 24, 2013, plaintiff reported pain in her arm and lower legs. She demonstrated a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (Tr. 280-82.) On November 22, 2013, Dr. Johnson noted mild lower back tenderness on examination. (Tr. 277-79.) On January 21, 2014, Dr. Johnson assessed plaintiff with arthropathy in her knees and shoulders. He noted mild arthritic changes on examination. (Tr. 274-76.)

X-rays of plaintiff's lumbar spine from February 26, 2014 showed mild multilevel degenerative endplate change and mild levoconvex curvature. X-rays of her right knee showed mild osteoarthritis in the medial compartment. X-rays of her left knee demonstrated no acute

fracture, mild osteoarthritis in the medial compartment, and tiny ossification of calcification projects in the inferior aspect of Hoffa's fat pad. (Tr. 325-27.)

Plaintiff began treating with Dr. Khaja Mohsin on February 26, 2014 for lower back and knee pain. Dr. Mohsin conducted systemic reviews at each of the sixteen recorded examinations spanning from February 2014 through October 2015. His handwritten notes are largely illegible. It appears, however, he assessed plaintiff with shoulder pain, lower back pain, and degenerative joint disease and prescribed Meloxicam, Xanax, and Tizanidine. (Tr. 363-70, 456-66.)

State-agency consultant Dr. David Mack conducted an RFC assessment on April 4, 2014. He opined plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 78-77.)

Plaintiff followed-up with Dr. Johnson on April 21, 2014 and reported she was doing "OK" but her feet hurt. She said she was an usher at her church. Plaintiff demonstrated a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (Tr. 500-02.)

Plaintiff presented to Memorial Hospital on May 14, 2014 with left wrist and left shoulder pain. X-rays of her left shoulder demonstrated biceps tendon calcification at its insertion site on the greater tuberosity, which may have indicated tendonitis; no acute osseous abnormality; and mild left glenohumeral and acromioclavicular joint arthrosis. She was assessed with shoulder and wrist pain and osteoarthritis of the shoulder. The treatment provider gave plaintiff a sling and instructed her not to wear it for more than three days. (Tr. 343-51.)

An MRI of plaintiff's left shoulder on May 23, 2014 evidenced supraspinatus mild tendinosis with associated calcific tendinosis of the mid fiber. (Tr. 354-56.)

Plaintiff underwent a nerve conduction study of her left upper extremity on June 13, 2014, which was consistent with left mild carpal tunnel syndrome. (Tr. 385.)

Plaintiff presented to Dr. Johnson on July 21, 2014 with complaints of pain in her left shoulder, lower back, and bilateral ankle and foot. She stated she forgot to take her medicine sometimes and lost her breath easier. On examination, Dr. Johnson noted mild degenerative joint disease changes, some tenderness of the left shoulder area, and complaints of pain with elevation of the left shoulder at 120 degrees. Dr. Johnson assessed plaintiff with arthropathy, hypothyroidism, lower back pain, and carpal tunnel syndrome in the left wrist. He instructed plaintiff to do gentle stretching exercises and apply olive oil for arthropathy and back pain, and to continue to see her specialist for carpal tunnel. (Tr. 497-99.)

An MRI of plaintiff's thoracic spine from July 30, 2014 evidenced mild thoracic spin scoliosis. An MRI of her lumbar spine showed stable mild lumbar spine spondylosis and minimal levoscoliosis. (Tr. 373-74.)

An MRI of plaintiff's lumbar spine from August 9, 2014 demonstrated a right paracentral disc protrusion at L4-5 that narrowed the right lateral recess, with associated mild spinal canal and right foraminal stenosis; mild bilateral foraminal narrowing at L5-S1; and mild levoconvex lateral curvature. (Tr. 372.)

Dr. Mohsin completed a medical source statement on August 15, 2014. He opined plaintiff could lift/carry less than ten pounds frequently; stand/walk for less than one hour without interruption due to lumbar disc bulges, spinal stenosis, and carpal tunnel syndrome; could not get through an eight-hour day on a sustained basis without lying down; could never

climb, stoop, crouch, or crawl; could occasionally balance and kneel; and was limited in her ability to push/pull and work around heights, moving machinery, temperature extremes, and vibration. (Tr. 417-19).

Plaintiff presented to the emergency room at Memorial Hospital on August 30, 2014 with complaints of back pain that worsened with walking. An examination demonstrated a normal back inspection with tenderness to palpation over the left posterior hip and paralumbar soft tissues. A CT of plaintiff's abdomen and pelvis showed mild levoconvex curvature of the lumbar spine with mild degenerate endplate change at multiple levels and no significant central stenosis or neural foraminal narrowing. Plaintiff was assessed with a muscle strain and instructed to apply ice and heat and take muscle relaxers, Flexeril, and ibuprofen. (Tr. 359-62, 378-84.)

On September 5, 2014, Dr. Mohsin opined plaintiff became disabled on January 1, 2013 due to severe lower back pain and disc bulge. (Tr. 415.)

Dr. Johnson reviewed Dr. Mohsin's statement from August 2014 and agreed with the limitations imposed therein. (Tr. 474.)

On March 16, 2015, plaintiff presented to Dr. Johnson and reported she was doing "OK." (Tr. 493-95.)

On March 26, 2015, plaintiff consulted with Dr. Christopher Heffner, a neurosurgeon, who ordered plaintiff a TENS unit and an LSO brace and referred her to pain management. (Tr. 424-26.)

On June 8, 2015 plaintiff told Dr. Johnson her back was "better" but the pain was returning. Plaintiff received steroid injections, which were helpful. Dr. Johnson assessed

plaintiff with hypothyroidism, hypercholesterolemia, lower back pain, and osteoarthritis. (Tr. 490-92.)

In July and August 2015, plaintiff received steroid injections as part of pain management. (Tr. 431-45.)

Plaintiff followed-up with Dr. Johnson on August 14, 2015 and reported her back injections helped. (Tr. 487-89.) On November 5, 2015, plaintiff told Dr. Johnson she was unable to work. Injections in her back only lasted one day. On examination, plaintiff demonstrated some tenderness of her left wrist and complained of pain on range of motion of the left shoulder. She showed some tenderness of her lower back and motion and flexion caused pain. Dr. Johnson began prescribing Naprosyn for osteoarthritis. (Tr. 483-86.)

On December 29, 2015, Dr. Mohsin reviewed his statement from August 2014 and opined plaintiff's limitations remained the same. (Tr. 522.)

## Analysis

The Social Security Regulations require an ALJ to afford controlling weight to a treating source's opinion, so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527. Otherwise, the ALJ must identify "good reasons" for rejecting the opinion and assess it against the following factors: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) the physician's specialization. *Id.*

Here, Dr. Mohsin, a treating source, completed a medical source statement that imposed several restrictions on plaintiff that limited her to less-than sedentary work. "Medical source statements submitted by treating sources provide medical opinions which are entitled to special

significance" and ALJs "must weigh medical source statements under the rules set out in 20 CFR 404.1527. . ." SSR 96-5p, at *4-5.[2]

The ALJ opined Dr. Mohsin's opinions were inconsistent with his "own treatment notes and with the other medical evidence." The ALJ, however, did not identify the alleged inconsistencies or even summarize any of Dr. Mohsin's treatment records. It is therefore impossible to review the ALJ's decision, and her failure to minimally articulate her opinion constitutes error. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

An ALJ, however, can also refuse to give special weight to a treating source opinion if it is not supported by medical findings. 20 C.F.R. § 404.1527. Here, the ALJ stated, "Dr. Mohsin did not discuss in detail the medical findings that support his assessment. . ." However, Dr. Mohsin explained he based his opinions on diagnoses of lumbar disc bulges, spinal stenosis, and carpal tunnel syndrome. Nonetheless, the ALJ altogether failed to articulate what weight she assigned to Dr. Mohsin's opinion or consider the factors in 20 C.F.R. § 404.1527. Even if an ALJ gives sound reasons for refusing to give a treating source's opinion controlling weight, the ALJ still must determine what value the assessment merits in considerations of "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Finally, the ALJ improperly faulted Dr. Mohsin's opinions because plaintiff's condition appeared to be stable. Equating a stable condition with an ability to work is erroneous. The "key" to a non-disability determination is not whether a claimant's condition is stable or

---

[2] SSR 96-2p rescinded SSR 96-5p for claims filed on or after March 27, 2017. Plaintiff filed his claim on June 10, 2013 and, therefore, SSR 96-5p is still applicable.

improving, "but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014).

Although an ALJ does not need to discuss every piece of evidence, she must provide a logical bridge between the evidence and her conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ, here, failed to adequately explain her findings and the Court cannot determine whether substantial evidence supports her assessment. "[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes plaintiff was disabled or that she should be awarded benefits for the period in question. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: FEBRUARY 28, 2018**

                                         *s/ J. Phil Gilbert*
                                         **J. PHIL GILBERT**
                                         **DISTRICT JUDGE**